Can you hear me okay? Nope, you're gonna need to come closer or speak up. Okay, can you hear me now? Barely. My voice is a little raspy. Do you want some water? That might help. Does it help? Yeah, just try to keep your voice up and we'll let you know if we can't hear you. Excuse me, my name is Van Pounds. I'm the plaintiff appellant in this case and I'd like to reserve two minutes for rebuttal if you may, but you'll want to look at the clock in front of you to keep your own time. I'll remind you if you get off track, but otherwise it's your responsibility to keep track of your time. Okay, thank you, Your Honor. This case stems from defendants' disclosure of a secret derogatory report in reaction to my filing as a candidate for judicial office. Defendants say that they were disclosing the report merely in response to a newspaper reporter's public records request, but the overwhelming evidence demonstrates that that was not true. The reporter's public records request asked for documentation that explained my demotion and pay cut, but I had never been demoted and the report they disclosed, I was completely unaware of its existence. Nobody had ever given me notice of that. Given you notice of the report, you obviously knew that your position had changed and that your salary had been reduced by some small amount. Yes, Your Honor, but it wasn't as a result of a demotion. But you know what had happened to you, you just didn't know about the report. Correct, Your Honor. When they disclosed the report, they gave the impression that it was explaining a disciplinary action and I had never been disciplined at all. And the evidence adduced after that, clearly the defendants in this case admitted numerous times, they confirmed that the report was not responsive, it did not match with the public records request. If you look back, if you look back to Defendant White's March 26, 2018 email, where he confirmed there was no match. On the first appeal of this case, defendants admitted that I was not demoted and that there was no adverse action ever taken against me as a result of the report. Well, there seemed to be some conflicting potential positions on their part. First, there's no adverse action and then they say there is, right? Well, that came very late in the game, Your Honor. I mean, DCBS, the employing agency, in deposition, DCBS confirmed that not only that I had never been disciplined, but that I had never been negatively affected as a result of the secret report and that there was no causal connection between either of my subsequent job changes. And that should be dispositive, that's the employing agency. And Defendant White on deposition testified that no action was taken against me as a result of the secret report and that my employment status had never changed as a result of the report. Now, significantly right after that, he tried to change his testimony after conferring with Defense Counsel and apparently at the behest of Defense Counsel, he tried to say, oh well, it really was secretly used against you, you know. But when pressed on that, there was no foundation, no foundation at all to that newfound belief. And as a matter of fact, it's contradicted by his March 26, 2018 email. What was the sequence in time between the time of compiling the information that was then included in the report and your job change that resulted in a slight decrease in salary? What's the timing relationship between those two things? Years apart, Your Honor. The secret report was created in May of 2015. I did a job rotation as part of the department's reorganization because divisions were being combined. I actually rotated out of a position and my boss rotated into my possession and that was in November of 2015. So the report was created in May of 2015. My job rotation was in November of 2015 and then my subsequent, I actually applied for, at the end of the job rotation, I applied for a senior policy analyst position. I was selected for that in April of 2017. So that's, you know, almost two years, well, almost two years later. But the two events in 2015, your job, the job reassignment, was that the job reassignment that resulted in your very slight decrease in salary? No, Your Honor. Okay, so when did that happen? It was the analyst position. That happened in April of 2017. Got it, okay, yep. So I wanted to focus in terms of the, you know, the constitutional question you presented. So I've read varying statements in the briefs but it would help, I think, for me to have you a illuminate. What exactly was the clearly established right that you view as being violated? Actually, there's a number of cases and I think you read... Tell me the right and then we'll get to the cases. Okay, Your Honor. I had a right, a clearly established right, to speak out as a private citizen on a matter of public concern. That had been established since Pickering. But what you're objecting to is the release of the report. Did you have a right to have that report not released in response to the inquiry? Yes, Your Honor. Okay, so where's that coming from? So that's, I understand the Pickering argument about you can obviously go out and speak and then that has a whole host of things. But as Judge Fletcher points out, the focus of the litigation is the report and the report being released to two different locations. One to the reporter and one to the governor. Correct. So let's just take the reporter. What was the clearly established right to prevent that report being disclosed to the reporter? Right. I think this court could look at Kohs-Elter versus... No, tell me the right. Oh, I'm sorry. We got to get the right defined and then we can do what I think you want to do is tell us about the cases. Well, I think the right to speak as a private citizen on a matter of public concern is the right. But the defendants were clearly on notice that even a minor act of retaliation would be unlawful if it would reasonably likely to deter protected speech. And I was engaging in protected speech. I was running as a candidate for judicial office and I was speaking out against the way that the judges had been selected. They were being unilaterally selected by one person. I was speaking out on that. And so I had a right... So is your contention that your right at that point was to not have them release any records in response to the public records request? Well, my right was that they could not interfere with my speech in a manner that would deter protected speech. Okay, so tell me how the release of the report in response to a public records request infringes on that right? Well, Your Honor, it wasn't in response to the public records request. I think that's one point there is it wasn't in response. It was merely a pretext. It was a pretext because they've admitted that it didn't match up with the request. Okay, so your point is that it wasn't responsive? It was not responsive to the records request. I think they over-responded, in effect. Way over-responded. So if the report was responsive to the records request, let's just assume for purposes of my question that it was responsive, would you still have a First Amendment claim? Good question. Well, thank you. Your Honor, I mean, in this case what you're asking is if it was true. If it was true. If it was responsive. I'm trying to understand, as I think you've received a number of questions from the panel, what exactly is the right? And my question really goes at trying to, if it was responsive to the request, I'm trying to define the right by understanding what it wouldn't be. So this is why I'm asking this question. If it was responsive to the request, would you still have a First Amendment claim? Frankly, I've never analyzed in that way, Your Honor, because it's clearly not responsive to the request. Okay, so that is critical to your argument about the right. I think that's the gist of it right there, Your Honor. I mean, if I'd been on... And that's the retaliation factor you're saying, because it's not responsive. It was not responsive on this. I mean, if I'd been on notice that it existed, if I'd been given a chance to respond to it, I mean, you know, we'd be in a different situation. If I'd been given a chance... No, every time that there's a public records request that gets made, I'm trying to understand the practical consequences of your expansive definition of the right here that would require a government agency to consider what, you know, what litany of things with respect to responding to public records requests would they have to go through to ensure that they're not violating a First Amendment right. I mean, I've never seen anything so expansively defined, and that's part of our problem with... on the qualified immunity question, is we need to be able to look at something that says not only is this a right, but that we have, you know, case law that says it's a clearly established right. Well, in this case, I think it's significant, Your Honor. The defendants had three weeks to consider their course of conduct. Three weeks, during which time they had the opportunity to consult with legal counsel, apparently did, and... but since then, they've refused to disclose the full extent of their deliberations. They try to hide behind claims of attorney-client privilege, but they had three weeks. This was not like an officer, police officer's situation, where they have to make an immediate choice. They had plenty of time to discuss this and to deliberate on it. But does that cut for you or against you? That is to say, they thought about it, and after having thought about it, they released the report, and they might have made a mistake, but we're talking qualified immunity. Well, Your Honor, if it was in their favor, I submit that they would disclose it. This is something that, if it helped them, if their legal advice helped them, why not show it? No, I'm not talking about what the legal advice was. I'm talking about the fact that you're now talking about was to say they sought legal advice, they thought about it, and then they acted. So that suggests to me that they're trying to obey whatever the legal requirements are. They might have made a mistake, I get that, but it sounds as though they thought about it and decided it was okay. Well, actually, I think it may cut the other way, Your Honor. It actually shows very clearly their intent on this. They had plenty of time to consider it, and they still did it. They knew that it didn't match with the request. Defendant Lye's email on March 26th confirms that. The testimony during depositions confirms that. The admissions on the previous appeal in the case confirmed that. So the fact that they had plenty of time to consider it shows they served their retaliatory dish very cold. They were very cold when they did this, and in point of fact... So let me see if I can define the right that I think you're talking about. It seems to me it would be that the over-disclosure resulted, was in effect, an act of retaliation to deter protective speech. Would that be accurate? That is absolutely correct, Your Honor. So now we'll go to Part 2, which I know you were going to ask us to get to. What cases would best support that as a clearly established right? Well, if you were looking at only one case, I might point to Ulrich v. City and County of San Francisco. I mean, you're not going to find... I don't think you'll... I couldn't find, and I don't think you'll find a case that's going to be identical with this, or closely identical to this, because I would submit that no reasonable public official would have done what the defendants did in this case. If they had, maybe they'd have some precedent, but I don't think any reasonable official would have done what they did on this. Let me take what I think is the Ulrich case, and quite a big difference there. That really is kind of an internal situation with respect to claimed professional competence, and then whether they rescinded or didn't rescind the job privileges, etc. So I was having trouble linking that up with what we just now defined as the right. The closest link would be the fact that they actually disclosed in Ulrich an investigation, and that they used that to mar the plaintiff's employment record, and that's about the closest I saw. I mean, here's a situation where it's a secret report, secretly prepared, three years in advance, no action ever taken against me. They pull it out, they dust it off, and they disclose it to a newspaper reporter, and that newspaper reporter writes up an article that says I'm the least credible person in the unit. The state says that I'm the least credible person in the unit. What do you think happened to my candidacy after that? So my question, as I was reading through this, is why you didn't bring other claims as well, such as a privacy claim with respect to your employment records, or a defamation claim, or some other claim. I did bring a due process claim, Your Honor. I understand you brought due process, but you didn't bring any what we might consider more common law rights, or a challenge to the disclosure under the public records disclosure, right? I did raise some of those arguments initially, but those were all due to be state law claims, and so the court knocked those out on that, and so I was left with the due process claim in the First Amendment claims. The due process claim got knocked out, so here I am with the First Amendment claim. So it seemed like it's gotten whittled down over time, but the bottom line is, in this case, the defendants did wrong, and they need to be held accountable, and they should not be able to hide behind qualified immunity. Thank you, counsel. I will put a couple minutes on your clock for rebuttals, since you're out of time. I'm sorry. No, that's okay. We'll hear from you again after we hear argument from you. Thank you, Your Honor. Opposing counsel, thank you. Good morning. May I please the court pen a shot for the state defendants, asking this court to affirm. Plaintiff here seeks damages from state officials because he disagrees with how they responded to a valid public records request from a reporter, but the undisputed facts show established that the disclosed records were at least colorably responsive to the reporter's request, and the undisputed facts also established that the relevant decision-makers concluded as much after taking a close look at the question of responsiveness, and that's precisely the kind of decision on a closed question that is entitled to qualified immunity, regardless of whether the ultimate conclusion was right or wrong, because these public officials took a close look at a closed question and complied with what they believe that the state law required them to do, and that kind of decision-making is what qualified immunity is supposed to protect. In my view, that's sort of the crux of the case. I mean, I think my understanding as a plaintiff's view is perhaps it should be different because the primary judgment record supports an inference of personal animus towards plaintiff, but there's no personal animus exception to the public records disclosure, and so even if we accept plaintiff's view of the facts, these public officials, when faced with a public records request and something that was colorably responsive, I think very responsive in my view, had no choice but to disclose it. So what happens if I were to conclude that, in fact, they responded inappropriately in releasing this report? Inappropriately meaning over-inclusively, Your Honor? No, that it was not, in fact, responsive to the request. So assume that we're operating on that proposition, and second, that they're doing it with animus. What then? Where are we? So I guess the first part of your question, Your Honor, whether it was responsive or not, in some ways it doesn't matter whether, in fact, it was responsive. What matters is whether all reasonable officials would have viewed it as non-responsive. I think in order to rule against qualified immunity, Your Honor would have to conclude that all reasonable officials would have viewed this as non-responsive, not just that you view it as non-responsive, and I don't think the record supports that. And as for personal animus, again, even if you accept plaintiff's view that there was some personal animus mixed in here, which we dispute, but even if you accept that view, the state public records law does not authorize us to withhold public records in that situation. The public records are disclosable no matter what. An obligation to check or share your response with the subject of a public records request prior to responding? I don't think that there is a state law obligation to. The record suggests that sometimes this agency, as a courtesy, does do that, and I believe we did do that here, Your Honor. You did it after you disclosed the report. Before we disclosed the report, I think what happened was there was the first question from the reporter that asked about sort of salary history, job title, rotation history. We did not let him know before we responded to that. There was a second request from the reporter asking for information relating to the reasons for these rotations and so forth. Before releasing the report that we viewed responsive to that request, we did speak with plaintiff, and this is when we offered him a name-clearing hearing. He made a response that we interpreted as rejecting the name-clearing hearing, and then we went forward. Even though the, in a way, the report, at one point you took the position it didn't result in any adverse action, and then later, it seemed to me, the state changed its position, said, no, no, it's an adverse action. So that's one separate question I'd like you to address. But secondly, is there no exception within the Oregon public records law that would permit the state to not disclose this information, because at this point, it's a preliminary report on somebody's employment? So your first question, Your Honor, sort of two answers. One is that we had to accept that there was no demotion, because at the pleading stage, which is when the first appeal came through, plaintiff alleged that he had never been disciplined, and the record wasn't, the report wasn't in the record. We knew that this report existed, but it wasn't in the record. All we knew was plaintiff's allegations that he had never been disciplined. So we had to accept that. In truth, the way I've looked back in response to plaintiff's allegations, at the arguments that I made, both orally and in briefing, and consistently with the way that I remember it, is that I was agnostic about whether the job rotation was a demotion. To the extent that we said there was no adverse employment action, we were pointing out that there was no adverse employment action in relationship to his candidacy for public office, which happened many years later. And so when we kept hammering, or when I kept hammering that there was no adverse action, I said there was no adverse, he suffered no change in his employment after he declared candidacy, because to us that was the key issue. And then as to whether he had a demotion when this report was released, I tried to be agnostic about it because I had to accept the allegations and the pleadings, notwithstanding the fact that I didn't believe that to be true. So that's how I explain what plaintiff views as a change in position, Your Honor. And then as to whether state public records law allows us to withhold records in this instance, I'm aware of no statutory provision to that effect. Plaintiff doesn't cite any. So every single record for a state public employee that relates to their job, whether it's promotion, demotion, just daily, monthly, yearly reviews of performance, that's all public record in your view? There are a number of exceptions for confidential matters and a number of other exceptions specifically laid out in ORS chapter, I think it's 192, but none of them are applicable to the circumstances Your Honor identified. Here you have an investigation, a report that the individual was never apprised of until it was disclosed. And that in your view, a mere investigation undertaken by a state agency employing a public official, there's no way to or exception that would prevent you from disclosing that in your view? Not that I'm aware of, Your Honor, because ultimately the question is, do these records exist? And they do. You know, whether there's an objection to how those records were compiled, maybe it supports some other kind of claim. I'm not sure about that. But the records exist. We have an obligation to disclose them. I'm not quite sure how this case comes out, but I do have to say I'm somewhat sympathetic with Mr. Pounds. A report was prepared that was unfavorable to him. He knew nothing about it. He decides to run for public office. Then because of an inquiry from the newspaper, a report that he knew nothing about, that's unfavorable to him, that says some pretty I'm not sure what kind of a cause of action we have, but that's not very nice behavior. It's certainly unpleasant. Your Honor, to say that it's not nice behavior, I guess I don't accept the idea that there was some sort of animus baked into this. But I appreciate that this is not a situation that's pleasant for Mr. Pounds. Well, it's a secret report as far as he's concerned. And you give him a very short time to decide whether or not it should be released. And you don't quite give him an opportunity to say don't release it. You offer him an opportunity for some further hearing. I don't think he's been treated very well, frankly. I hear what you're saying, Your Honor. And I think the message has already been received by the relevant state actors. I will relay this concern as well. That being said, he had an opportunity for a name-clearing hearing. So the opportunity for a name-clearing hearing came after the disclosure? Before the disclosure, Your Honor. Before the disclosure. Correct, Your Honor. And would you have then responded to the public records request that you couldn't disclose it because of a pending matter? Tell me what the sequence would be. I think we would still have to disclose what we disclosed. The purpose of the name-clearing hearing is to comply with due process requirements. And because the appeal here doesn't involve a due process claim, I'm not prepared to speak as intelligently as I would about that if this did have that. Trying to understand. The name-clearing hearing would seem to be kind of a nugatory remedy for him if, and I just wanted to understand, you would still make the disclosure, but then he could, in parallel, now we've disclosed, have a name-clearing hearing. And that name-clearing hearing would result in other records that could be disclosed in  And this, of course, would, whatever name-clearing hearing and whatever result we have, would, I suspect, be after the election. That is to say, it wouldn't do him a darn bit of good with respect to the election that he's now running for office. Like a speed result. I'm not sure about the timing, Your Honor. But again, this idea of a name-clearing hearing is a due process question. It doesn't take much of an imagination to suspect that by the time you get an answer to a name-clearing hearing, after there has been a report that he was, whatever those bad words were about him, that you can undo the damage with respect to the election. You know, the way I, the record is unclear as to what the timing of that name-clearing hearing would have been, but there are some dates about sort of a two-day time frame. Now, how far in advance of the election was this report released? I'm sorry, Your Honor, I'm not sure the answer to that question. I think it was relatively far in advance because it happened very soon. The reporter's request came within days or weeks of when Mr. Pownes declared his candidacy, which would have had to have been well before the election. And I want to return to this idea of this name-clearing hearing. Again, the name-clearing hearing is germane to a due process claim, which is not before this Court. It doesn't bear any relationship to a First Amendment claim. No, but it bears a relationship to the chronology of the release. Right, right. And what I'm saying is, I don't think that due process prevents a state employer from putting negative material in somebody's personnel file or saying negative things about their job performance. But what it does perhaps require is a name-clearing hearing. I'm not saying it does because I'm not prepared to talk intelligently right now about due process, but I know that name-clearing is a concept that's germane to due process. And the way I understand that to work is, that allows other information to come into the public record so that anybody who looks at these records will get a two-sided picture. And that's what due process provides. Because due process doesn't prevent state employers from taking negative personnel actions. Instead, there is this other process to make sure that there is a two-sided picture. So he had made two allegations, one having to do with the disclosure to the reporter and the other to the governor. The fact that this report went to the governor, was there any negative or downside vis-a-vis Mr. Pounds? Or did it just sort of sit over there in the governor's office? I'm not aware of any evidence that there was any sort of damage to Mr. Pounds as a result of that specific action. I suspect maybe what he would like to suggest is that this impacted his election or his candidacy in some way. That perhaps the governor's office may have done something with this information in a way that affected his candidacy. I understand that to be maybe what he's gesturing at, but I'm not aware of any evidence to that  Thank you. So, unless the court has any other questions, I just want to repeat that we had public officials faced with a very close question here, and qualified immunity protects them in making these types of difficult decisions on close issues. And for that reason, the district court ruled correctly. Thank you. Thank you. We ask the court to affirm. Thank you, Your Honor. Just to clear up a couple of things, I was running as a candidate against the governor's appointee. I think that's significant. And the defendants knew that when they disclosed it to the governor's office, and they knew that when they disclosed it to the newspaper reporter. But what, well, let's just separate out the governor and disclosure to the governor. What impact did that have, are you alleging, from a constitutional standpoint? Well, I think you have to look at the intent, Your Honor. This was basically giving my opponent, the governor's appointee, ammunition. I mean, they didn't know what that was. If that, from the public disclosure, didn't have anything to do with the governor himself? Well, as far as what was actually done with it, they haven't disclosed that yet. I mean, they've closed off any communications with the governor's office, because it was to the governor's general counsel, and they say that's privileged, so they won't tell exactly what happened there. The name-clearing hearing, in this case, after I objected to the disclosure, they came back and tried to undermine any due process claim I had with an offer for name-clearing hearing, which basically said that you can request a hearing, it's going to be within two days. Oh, by the way, we're not telling you, you can't subpoena any witnesses. We're not telling you who made the allegations against you, because we've taken all the names out, so that was secret. But you can have your name-clearing hearing, which was kind of a joke, I'm sorry, and then they were going to disclose the records anyway, so, I mean, they'd already made it clear they were going to do that. So if there was an illusion of fairness coming out of that name-clearing hearing, that should be gone at that point. With regard to the Oregon public records law, there are a huge number of exemptions. In this case, this was a, at best, a preliminary investigation, because it was not complete. It was performed by an employee who had never received any training in investigations. It was done in a manner that was in violation of state HR policy, because I was not interviewed, because I was never given an opportunity to respond. So it couldn't be a complete investigation at that point. And if you look in the Oregon public records... I did look through all the exemptions in Oregon, and they're very similar to Washington and other standard public records, state public records, and I couldn't exactly see an exemption that would fit your category. Do you have one? There were a couple of them, arguably, Your Honor, and I'm sorry I don't have that. They're long statutes on this, but there were a couple, I think, that applied. And one indication in here is that the fact that all of these other people's names were taken out, which indicates some level of confidentiality, and when you have those types of confidential statements that are provided to a government agency as part of an investigation, then those are closed. Those are exempt from disclosure. So it's one of those things, as a matter of fact, if you make a public records request, I've made public records requests, and more often than not, I get turned down because it's like, you know, it's exempt, can't give it to you. So it's not a surprise when you hear that. In this case, they turned the other way and they were falling all over themselves to disclose this defamatory, derogatory report. I would also point out that the Oregon's public records law only authorizes disclosure of requested records. There's no specific exemption for not disclosing records that haven't been requested, because by definition, if it's not requested, public officials are not authorized to disclose it. Mr. Pounds, we understand, and I think you mentioned in your opening argument that that's okay, but that's the linchpin of your claim. So I think we understand your argument. If you'd like to take a few seconds to wrap up, I'd appreciate it. Your Honor, I would just say this, and I think that given the evidence before this court, this is a de novo review, and I think this court is empowered to find issues in this case, and I think that the clear, undisputed evidence in this case establishes that I was speaking as a private citizen on a matter of public concern. That's indisputable. I think given the nature of the documents they released that attacked my reputation for honesty and trustworthiness, there's no question it was adversarial at that point. It was an adversarial, it was an adverse employment action. And lastly, I think there's no question at all that their disclosure of that report was substantially motivated by my speech, and I would request this court find that. Appreciate it, Your Honors. Thank you very much. Thank you to both sides for your argument. That case is now submitted, and this court will stand in recess. All rise.
judges: McKEOWN, FLETCHER, DESAI